IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE NORRIS,<br>                      Plaintiff,<br>v.<br><br>FRANCISCAN PHYSICIAN NETWORK / SPECIALTY PHYSICIANS OF ILLINOIS, CRAIG MILLER, NITA WIRKUS, SHEREE BOYD, and MICHELLE BURGIO,<br>                      Defendants. | Case No.<br><br>Judge<br><br>Magistrate Judge |

## COMPLAINT

Plaintiff, CHRISTINE NORRIS, by and through her attorney, Aaron B. Maduff of Maduff & Maduff LLC, for her complaint against FRANCISCAN PHYSICIAN NETWORK / SPECIALTY PHYSICIANS OF ILLINOIS, CRAIG MILLER, NITA WIRKUS, and SHEREE BOYD, alleges and states as follows:

### Introduction

1. Plaintiff, Capt. Christine Norris, is a nurse practitioner with Defendant Franciscan Physicians Network/Specialty Physicians of Illinois. In January of 2012, Plaintiff opened a new clinic for Defendant called the Priority Patient First Clinic, the first and only "same day" clinic in Defendant's system (hereinafter "the PPFC"). This clinic was created for the purpose of easing pressure on the emergency room and to provide overflow for the primary care group for patients who needed to see a medical professional quickly, but were not in emergency situations or were unable to get appointments in the primary care group. In short, it was created to be a same day urgent care clinic.

2. The PPFC is also Franciscan St. James' first and only clinic led by a nurse practitioner. Plaintiff led the PPFC from the day it opened until she went on military leave on or about October 1, 2013.

3. Plaintiff was paid a salary plus a bonus based on the amount of revenue she brought into the system. The PPFC received special marketing and advertising far beyond what any other department received which resulted in Plaintiff achieving considerably better production than could be obtained in any other department.

4. On October 1, 2013, Plaintiff was called to active duty in support of the Military Entrance Processing Command. Plaintiff gave oral notice to Defendant Boyd in July of 2013, and written notice to Defendants Boyd and Wirkus on September 26, 2013 upon receiving her orders. Plaintiff returned to work October 6, 2014.

5. On or about May 2, 2014, Defendant Wirkus informed the 401(k) plan administrator that Plaintiff had been terminated resulting in a threat of a lump sum check being issued to Plaintiff with tax penalties. Although Plaintiff was able to persuade the plan provider that she had not been terminated, Plaintiff was still deprived her of a year of vesting status — 20% of her 401(k).

6. In December of 2014, with the exception of Plaintiff, Defendants paid a Christmas bonus to all employees of $500. Defendants paid Plaintiff a *pro-rated* bonus rather than the full bonus as required by the escalator provisions of USERRA.

7. While Plaintiff was on military leave, Defendant placed Physician Assistant Lance Kirby in charge of the PPFC. In or around June of 2014, Defendant Boyd told Plaintiff that Defendant Wirkus had notified the 401(k) provider that she had been terminated and informed her that Defendants would not be returning her to her former position. As a result,

Plaintiff filed a USERRA claim with the Department of Defense shortly before she returned to work.

8. When Plaintiff returned to work, on October 6, 2014, as promised, instead of putting her back in the PPFC, Defendants gave her a position as a primary care nurse practitioner. This is a position with considerably less status in a department that lacked the advertising of the Priority Patient First Clinic and therefore lacked the bonus opportunity.

9. When Plaintiff returned to work, Defendants did not refer patients to Plaintiff. Worse, they made cold calls to Plaintiff's patients in a concerted effort to reassign them to other medical providers. This has had the effect of further reducing Plaintiff's production numbers and concomitantly her bonus.

10. In addition, at the PPFC, Plaintiff treated patients who wanted to see doctors in the Express Care Clinic who were unavailable or overbooked. For this work, Plaintiff was paid an additional $85 per hour for an average of 12 hour per pay period. Those opportunities were given to Mr. Kirby and Plaintiff was denied them upon her return.

11. The Department of Labor, found in Plaintiff's favor and demanded the following remedies:

    a. Return Plaintiff to the Priority Patient First Clinic;

    b. Pay Plaintiff the full $500 bonus; and

    c. Grant Plaintiff vesting of her 401(k) for the time she was on duty.

12. In February of 2015, Defendants finally paid the remainder of the $500 bonus, but that was it.

13. Plaintiff has since been receiving complaints from patients who wish to see her, but are being told that they must see a different physician as opposed to her, a nurse practitioner..

**Parties**

14. Plaintiff, Capt. Christine Norris, (hereinafter "Plaintiff" or "Norris") is a citizen of the United States, who resides within the territorial limits of the United States District Court for the Northern District of Illinois. At all times relevant to this Complaint, Norris had performed service in the uniformed services, as that term is defined by 38 U.S.C. §4303(13).

15. At all times relevant to this Complaint, Norris was an employee, as that term is defined by 38 U.S.C. §4303(3).

16. On information and belief, Defendant, Franciscan Physician Network / Specialty Physicians of Illinois (hereinafter "Franciscan"), is a corporation with its primary place of business within the territorial limits of the United States District Court for the Northern District of Illinois. At all times relevant to this Complaint, Franciscan was an employer, as that term is defined by 38 U.S.C. §4303(4).

17. Defendant Craig Miller (hereinafter "Miller" or "Defendant Miller") is, on information and belief, a citizen and resident of the State of Illinois residing within the territorial jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division. Defendant Miller is the President of Franciscan. On information and belief, at all times relevant to this Complaint, Defendant Miller was an employer, as that term is defined by 38 U.S.C. §4303(4).

18. Defendant Nita Wirkus (hereinafter "Wirkus" or "Defendant Wirkus") is, on information and belief, a citizen and resident of the State of Illinois residing within the territorial jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division. Defendant Wirkus is the Regional Director of Human Resources for Defendant Franciscan. On information and belief, at all times relevant to this Complaint, Defendant Wirkus was an employer, as that term is defined by 38 U.S.C. §4303(4).

4

19. Defendant Sheree Boyd (hereinafter "Boyd" or "Defendant Boyd") is, on information and belief, a citizen and resident of the State of Illinois residing within the territorial jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division. Defendant Boyd is the Director of Clinical Operations for Defendant Franciscan. On information and belief, at all times relevant to this Complaint, Defendant Wirkus was an employer, as that term is defined by 38 U.S.C. §4303(4).

20. Defendant Michelle Burgio (hereinafter "Burgio" or "Defendant Burgio") is, on information and belief, a citizen and resident of the State of Illinois residing within the territorial jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division. Defendant Burgio is the Operations Manager for Primary Care. On information and belief, at all times relevant to this Complaint, Defendant Burgio was an employer, as that term is defined by 38 U.S.C. §4303(4).

### Jurisdiction and Venue

21. This Court has jurisdiction pursuant to 38 U.S.C. 4323(b)(3) and 28 U.S.C. §1331 because Plaintiff's claims involve federal questions arising under the Uniformed Services Employment and Reemployment Rights Act ("USERRA") of 1994, 38 U.S.C. §4301 *et seq*.

22. Venue is proper under 38 U.S.C. §4323(c)(2) and 28 U.S.C. §1391(b) as all defendants maintain places of business and/or residence in this district and the acts alleged to be in violation of USERRA occurred in this district.

### Facts

23. Defendant, Franciscan Physician Network / Specialty Physicians of Illinois is a group of outpatient clinics for Franciscan Alliance St. James Hospital.

Norris' Military Career

24. Plaintiff joined the U.S. Army on May 18, 2007 as a Second Lieutenant.

25. In January of 2009, Plaintiff was called to active duty to care for wounded personnel returning from Afghanistan and Iraq to homes in 18 states. Plaintiff remained in this position until August of 2011.

26. During that time Plaintiff was promoted to First Lieutenant in or about December of 2009, and then to Captain in or about June of 2011.

27. In 2012, Plaintiff transferred from the U.S. Army Reserves to the Illinois National Guard.

Defendant Recruits Plaintiff to Head Up the Priority Patient First Clinic

28. Plaintiff was recruited by Defendants in January of 2012 as a nurse practitioner.

29. Plaintiff was specially chosen to operate a new clinic within Defendant Franciscan's system called the Priority Patient First Clinic, (hereinafter "PPFC").

30. This clinic was developed for the purpose providing same day care that was otherwise unavailable to patients except at the emergency room.

31. Unfortunately, the emergency room was often overburdened with patients who were not in need of emergent treatment.

32. The PPFC was therefore designated to serve as an urgent care same day clinic.

33. The PPFC was a unique design managed by a non-physician.

6

34. Because of this exceptional opportunity to manage her own clinic, Plaintiff left here former position of five years.

35. Plaintiff was paid a salary plus a bonus based upon the PPFC's revenue production.

36. The PPFC had its own marketing and advertising campaign which greatly enhanced Plaintiff's earning potential.

37. In addition, Plaintiff, as the only medical provider of the PPFC was also given the opportunity to substitute for overbooked or absent physicians in the Express Care sites. For this she was paid an additional $85/hour for an average of an additional 12 hours a week or $1,020.00 per week.

Plaintiff Is Called to Active Duty

38. In or around July of 2013, the Illinois National Guard contacted Plaintiff to inform her of a possible position at the Military Entrance Processing Command (hereinafter "MEPCOM").

39. Plaintiff then informed Defendant Boyd of the potential position.

40. Plaintiff was particularly interested in the position because she needed an additional four months of active service credit to receive college benefits for her children.

41. Plaintiff was not given orders until September 26, 2013. She immediately informed Defendants Boyd, Burgio, and Wirkus each of whom expressed their disapproval and dismay:

    a. Defendant Boyd stated "So are you just going to up and leave like that?" Plaintiff responded that these were her orders and that she had no choice.

7

      b.      Defendant Burgio asked "So what am I supposed to do close your schedule?" Plaintiff responded that this was necessary and that Defendant Burgio was going to have to find coverage.

      c.      Defendant Wirkus demanded to see the orders as if Plaintiff was faking her call to duty.

42.      Plaintiff entered upon active duty the following Tuesday, October 1, 2013.

43.      Plaintiff returned from active duty one year later, Monday, October 6, 2014.

<u>Defendant Wirkus Informs Defendants' 401(k) Provider That Plaintiff Is Terminated</u>

44.      On information and belief, on or about May 2, 2014, Defendant Wirkus contacted Vanguard Group, Defendants Franciscan's 401(k) provider and falsely told them that Plaintiff had been terminated.

45.      On or about June 10, 2014, Vanguard sent Plaintiff a letter informing her that she had to transfer her 401(k) funds or take a lump sum and pay a tax.

46.      Plaintiff immediately called Vanguard to inquire about this letter and the reason she had to transfer her 401(k) funds.

47.      Vanguard informed her that the reason was that she had been terminated by Defendant Franciscan.

48.      Plaintiff immediately called Defendant Wirkus to find out why she had been terminated and left a message.

49.      Plaintiff then called Defendant Boyd.

50.      Defendant Boyd stated that in fact Plaintiff had not been terminated and suggested she call Wirkus.

51. When Plaintiff responded that she had called Wirkus, Boyd told her to contact Defendant Miller.

52. Plaintiff attempted to do so to no avail.

53. Plaintiff then contacted Boyd again and Boyd informed her that Wirkus had indeed terminated her, but that upon her return from duty, they would return her status to employed.

54. Plaintiff insisted that she was entitled to be returned to her former position and Boyd told her that they had already replaced her and she would not be permitted to return to the PPFC.

55. Plaintiff immediately began to explore her options under the Uniform Services Employment and Reemployment Rights Act and filed a complaint with the Department of Defense on or about October 3, 2014.

Plaintiff Returns to Work

56. On or about September 23, 2014, Plaintiff informed Boyd and Wirkus on a conference call that she would be returning on October 6, 2014 and that she expected to be returned to the PPFC.

57. Boyd (with Wirkus' confirmation) informed Plaintiff that she would not be returned to the PPFC and that she should not return until they found a place for her.

58. Plaintiff nonetheless returned on October 6 and Defendants had no position for her. Instead they simply sat her in the HR offices for two days.

59. On October 9, 2014, Defendants assigned Plaintiff to a family practice clinic assisting Dr. William Luebbe.

9

60. Dr. Luebbe planned to and did leave Defendants employ on or about November 19, 2014.

Defendants Deprive Plaintiff of Dr. Luebbe's Patients

61. The result of these developments should have been to provide Plaintiff with an excellent patient load that Dr. Luebbe had developed over thirty years of practice. Indeed, Dr. Luebbe was informing people that Plaintiff would be taking over for him.

62. Shortly before Dr. Luebbe left however, Defendants sent a letter with Dr. Luebbe's name in the signature block to all of his patients stating that he would be leaving and providing them with options for other medical providers, specifically excluding Plaintiff.

63. On information and belief, Dr. Luebbe never saw the letter until after it was sent.

64. Fortunately, Dr. Luebbe had informed many of his patients directly that Plaintiff was to be taking over for him.

65. Nonetheless, Plaintiff was only able to recover about one third of Dr. Luebbe's patients.

66. Many of Dr. Luebbe's patients who had been told that Plaintiff would be taking over their treatment tried to contact Plaintiff without success. Instead, Defendants directed them to other providers.

Department of Labor USERRA Negotiations

67. The Department of Defense Employer Support of Guard and Reserve representative made an effort to mediate the dispute which failed in or around October of 2014 at which time the case was referred to the Department of Labor.

68. The Department of Labor conducted an investigation and found in Plaintiff's favor on or about December 23.

69. The Department of Labor then tried to resolve the case demanding the following:

   a. Return Plaintiff to the Priority Patient First Clinic;

   b. Pay Plaintiff the full $500 bonus; and

   c. Grant Plaintiff vesting of her 401(k) for the time she was on duty.

70. Defendants refused.

71. Defendants then began a campaign of cold calling Dr. Luebbe's former patients with an effort to reassign them away from Plaintiff.

72. Eventually, in February of 2015, Defendants paid Plaintiff the remainder of her $500 bonus, but the other matters remain unresolved.

73. Defendants continue to contact Dr. Luebbe's patients to redirect them away from Plaintiff.

74. Several of those patients have complained because they want to see Plaintiff.

### Count I

**Demand for Relief for Discrimination on the Basis of Military Status and Service
And for Failure to Escalate Vesting
(Termination and Failed Vesting of 401(k))
In Violation of 38 U.S.C. §§4311(a), and 4313(a)(2)
Against All Defendants**

75. Plaintiff restates and realleges paragraph 1 through paragraph 74 as paragraph 75 of this Count I.

76. By virtue of the foregoing Defendants discriminated against Plaintiff by terminating her 401(k) plan, denied her escalation rights in the vesting of her 401(k) in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301, *et. seq.*, and specifically 38 U.S.C. §§4311(a) and 4313(a)(2)

77.  As a result of these violations, Plaintiff has suffered damages of a pecuniary nature.

78.  Defendants' violations were willful, warranting the imposition of liquidated damages.

WHEREFORE, Plaintiff, Christine Norris, respectfully requests that this Honorable Court enter judgment in her favor and against all Defendants, jointly and severally, for lost benefits and liquidated damages, for an order appropriately vesting her 401(k) benefits, and for litigation expenses, attorneys' fees and costs, and for such other and further relief this Court deems just or equitable.

### Count II

**Demand for Relief Discrimination/Retaliation for Exercise of USERRA Rights
(Reemployment at the Patient First Care Clinic)
In Violation of 38 U.S.C. §§ 4311(b), 4312, and 4313(a)
Against All Defendants**

79.  Plaintiff restates and realleges paragraph 1 through paragraph 74 as paragraph 79 of this Count II.

80.  By virtue of the foregoing Defendants discriminated and/or retaliated against Plaintiff, and failed to re-employ her in the same position she had before she went on military leave in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301, *et. seq*., and specifically 38 U.S.C. §§4311(b), 4312, and 4313(a).

81.  As a result of these violations, Plaintiff has suffered damages of a pecuniary nature.

82.  Defendants' violations were willful, warranting the imposition of liquidated damages.

WHEREFORE, Plaintiff, Christine Norris, respectfully requests that this Honorable Court enter judgment in her favor and against all Defendants, jointly and severally, for back pay, lost benefits, liquidated damages, damages, for reinstatement pursuant to 38 U.S.C. §4313 (a)(2)(A) with the protections of §4316(c) upon commencement of reinstatement, litigation expenses, attorneys' fees and costs, and for such other and further relief this Court deems just or equitable.

## Count III

**Demand for Relief Discrimination/Retaliation for Complaints of USERRA Violations (Reassignment of Patients)**
**In Violation of 38 U.S.C. §4311(a) and (b)**
**Against All Defendants**

83. Plaintiff restates and realleges paragraph 1 through paragraph 74 as paragraph 83 of this Count III.

84. By virtue of the foregoing Defendants discriminated and/or retaliated against Plaintiff by turning her patients away from her because he complained of USSERA violations, in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301, *et. seq*., and specifically 38 U.S.C. §4311.

85. As a result of these violations, Plaintiff has suffered damages of a pecuniary nature.

86. Defendants' violations were willful, warranting the imposition of liquidated damages.

WHEREFORE, Plaintiff, Christine Norris, respectfully requests that this Honorable Court enter judgment in her favor and against all Defendants, jointly and severally, for back pay,

lost benefits and liquidated damages, and litigation expenses, attorneys' fees and costs, and for such other and further relief this Court deems just or equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

                                                Respectfully submitted,

                                                Christine Norris

                                                By:  /S/ AARON B. MADUFF

                                                          One of her attorneys

Aaron B. Maduff
Atty. No. 6226932
Maduff & Maduff LLC
Michigan Plaza at Illinois Center
205 N. Michigan Avenue
Suite 2050
Chicago, IL 60601
Phone: 312/276-9000