IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE NORRIS,<br><br>                       Plaintiff,<br><br>      v.<br><br>FRANCISCAN PHYSICIAN NETWORK / SPECIALTY PHYSICIANS OF ILLINOIS, CRAIG MILLER, NITA WIRKUS, SHEREE BOYD, and MICHELLE BURGIO,<br><br>                       Defendants. | Case No. 15-cv-1494<br><br>Judge Shadur<br><br>Magistrate Judge Rowland |

## **AMENDED COMPLAINT**

Plaintiff, CHRISTINE NORRIS, by and through her attorney, Aaron B. Maduff of Maduff & Maduff LLC, for her complaint against FRANCISCAN PHYSICIAN NETWORK / SPECIALTY PHYSICIANS OF ILLINOIS, CRAIG MILLER, NITA WIRKUS, SHEREE BOYD, and MICHELLE BURGIO, alleges and states as follows:

### **Introduction**

1. On October 1, 2013, Plaintiff, a Captain in the U.S. Army, was called to active duty in support of the Military Entrance Processing Command. Defendants told her that they were displeased with the situation. In retaliation for her taking military leave, in May of 2014, Defendant Wirkus informed the 401(k) plan administrator that Plaintiff had been terminated. Plaintiff contacted the Department of the Army ESGR ombudsman who then contacted Defendants regarding USERRA violations. Upon her return in October of 2014, in retaliation for her complaints of USERRA violations and in retaliation for her taking military leave, Defendants embarked upon a campaign of harassment aimed at creating an intolerable environment in which

Plaintiff would be unable to work. This conduct was aimed at, and eventually successfully achieved, a constructive discharge.

**Parties**

2. Plaintiff, Cpt. Christine Norris, (hereinafter "Plaintiff" or "Norris") is a citizen of the United States, who resides within the territorial limits of the United States District Court for the Northern District of Illinois. At all times relevant to this Complaint, Norris had performed service in the uniformed services, as that term is defined by 38 U.S.C. §4303(13).

3. At all times relevant to this Complaint, Norris was an employee, as that term is defined by 38 U.S.C. §4303(3).

4. On information and belief, Defendant, Franciscan Physician Network / Specialty Physicians of Illinois (hereinafter "Franciscan"), is a corporation with its primary place of business within the territorial limits of the United States District Court for the Northern District of Illinois. At all times relevant to this Complaint, Franciscan was an employer, as that term is defined by 38 U.S.C. §4303(4).

5. Defendant Craig Miller (hereinafter "Miller" or "Defendant Miller") is, on information and belief, a citizen and resident of the State of Illinois residing within the territorial jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division. Defendant Miller is the Executive Director of Franciscan. On information and belief, at all times relevant to this Complaint, Defendant Miller was an employer, as that term is defined by 38 U.S.C. §4303(4).

6. Defendant Nita Wirkus (hereinafter "Wirkus" or "Defendant Wirkus") is, on information and belief, a citizen and resident of the State of Illinois residing within the territorial jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division. Defendant Wirkus is the Regional Director of Human Resources for Defendant

Franciscan. On information and belief, at all times relevant to this Complaint, Defendant Wirkus was an employer, as that term is defined by 38 U.S.C. §4303(4).

7. Defendant Sheree Boyd (hereinafter "Boyd" or "Defendant Boyd") is, on information and belief, a citizen and resident of the State of Illinois residing within the territorial jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division. Defendant Boyd is the Director of Clinical Operations for Defendant Franciscan. On information and belief, at all times relevant to this Complaint, Defendant Wirkus was an employer, as that term is defined by 38 U.S.C. §4303(4).

8. Defendant Michelle Burgio (hereinafter "Burgio" or "Defendant Burgio") is, on information and belief, a citizen and resident of the State of Illinois residing within the territorial jurisdiction of the United States District Court for the Northern District of Illinois, Eastern Division. Defendant Burgio is the Operations Manager for Primary Care. On information and belief, at all times relevant to this Complaint, Defendant Burgio was an employer, as that term is defined by 38 U.S.C. §4303(4).

**Jurisdiction and Venue**

9. This Court has jurisdiction pursuant to 38 U.S.C. 4323(b)(3) and 28 U.S.C. §1331 because Plaintiff's claims involve federal questions arising under the Uniformed Services Employment and Reemployment Rights Act ("USERRA") of 1994, 38 U.S.C. §4301 *et seq*.

10. Venue is proper under 38 U.S.C. §4323(c)(2) and 28 U.S.C. §1391(b) as all defendants maintain places of business and/or residence in this district and the acts alleged to be in violation of USERRA occurred in this district.

**Facts**

11.     Defendant, Franciscan Physician Network / Specialty Physicians of Illinois is a group of outpatient clinics for Franciscan Alliance St. James Hospital.

12.     Plaintiff, a nurse practitioner worked for Defendant in the Priority Patient First Clinic, (hereinafter "PPFC").

13.     The PPFC was of a unique design managed by a non-physician.

14.     Because of this exceptional opportunity to manage her own clinic, Plaintiff left here former position of five years.

15.     Plaintiff was paid a salary plus a bonus based upon the PPFC's revenue production.

16.     The PPFC had its own marketing and advertising campaign which greatly enhanced Plaintiff's earning potential.

17.     In addition, Plaintiff, as the only medical provider of the PPFC was also given the opportunity to substitute for overbooked or absent physicians in the Express Care sites. For this she was paid an additional $85/hour for an average of an additional 12 hours a week or $1,020.00 per week.

Plaintiff Is Called to Active Duty

18.     In or around July of 2013, the Illinois National Guard contacted Plaintiff to inform her of a possible position at the Military Entrance Processing Command (hereinafter "MEPCOM").

19.     Plaintiff then informed Defendant Boyd of the potential position.

20.     Plaintiff was particularly interested in the position because she needed an additional four months of active service credit to receive college benefits for her children.

21. Plaintiff was not given orders until September 26, 2013. She immediately informed Defendants Boyd, Burgio, and Wirkus each of whom expressed their disapproval and dismay:

    a. Defendant Boyd stated "So are you just going to up and leave like that?" Plaintiff responded that these were her orders and that she had no choice.

    b. Defendant Burgio asked "So what am I supposed to do close your schedule?" Plaintiff responded that this was necessary and that Defendant Burgio was going to have to find coverage.

    c. Defendant Wirkus demanded to see the orders as if Plaintiff was faking her call to duty.

22. Plaintiff entered upon active duty the following Tuesday, October 1, 2013.

23. Plaintiff returned from active duty one year later, Monday, October 6, 2014.

Defendant Wirkus Informs Defendants' 401(k) Provider That Plaintiff Is Terminated

24. On information and belief, on or about May 2, 2014, Defendant Wirkus contacted Vanguard Group, Defendants Franciscan's 401(k) provider and falsely told them that Plaintiff had been terminated.

25. On or about June 10, 2014, Vanguard sent Plaintiff a letter informing her that she had to transfer her 401(k) funds or take a lump sum and pay a tax.

26. Plaintiff then contacted Defendant Boyd who informed her that Wirkus had indeed intentionally terminated her.

27. Plaintiff insisted that she was entitled to be returned to her former position and Boyd told her that they had already replaced her and she would not be permitted to return to the PPFC.

5

28.     Plaintiff immediately began to explore her options under the Uniform Services Employment and Reemployment Rights Act and filed a complaint with the Department of Defense on or about October 3, 2014.

Plaintiff Returns to Work to a Campaign of Harassment

29.     On or about September 23, 2014, Plaintiff informed Boyd and Wirkus on a conference call that she would be returning on October 6, 2014 and that she expected to be returned to the PPFC.

30.     Boyd (with Wirkus' confirmation) informed Plaintiff that she would not be returned to the PPFC and that she should not return until they found a place for her.

31.     Thus occurred the first instances of what would eventually become a campaign of harassment including the following:

   a.   Upon her returning to work, Defendant refused to place Plaintiff and simply sat her in the HR offices for two days.

   b.   Plaintiff was eventually assigned to a position with significantly less status in the family practice clinic.

      i.   This clinic also lacked the marketing material which would mean less patients and could potentially affect her bonus.

      ii.  Plaintiff was kept in the family practice clinic and denied her own clinic for nearly for approximately five months.

   c.   When the Family Practice doctor, William Leube, determined to retire and leave his patients with Plaintiff, Defendants sent a letter with his name in the signature block to all of his patients stating that he would be leaving and providing them with options for other medical providers, specifically excluding Plaintiff.

d. Many of Dr. Luebbe's patients who had been told that Plaintiff would be taking over their treatment tried to contact Plaintiff without success. Instead, Defendants directed them to other providers.

Department of Labor USERRA Negotiations

32. The Department of Defense Employer Support of Guard and Reserve representative made an effort to mediate the dispute which failed in or around October of 2014 at which time the case was referred to the Department of Labor.

33. The Department of Labor conducted an investigation and found in Plaintiff's favor.

34. The Department of Labor then tried to resolve the case demanding the following:

    a. Return Plaintiff to the Priority Patient First Clinic;

    b. Pay Plaintiff the full $500 bonus; and

    c. Grant Plaintiff vesting of her 401(k) for the time she was on duty.

35. Defendants refused.

36. Defendants then began responding to dozens patients who had called seeking treatment by Plaintiff, or who Defendants had cold called, with an effort to reassign them away from Plaintiff. In so doing, on information and belief, they implied or outright told those patients that:

    a. Plaintiff could not prescribe needed medications;

    b. Plaintiff could not refill medications; and that

    c. Plaintiff was not competent to treat them.

37. Patients felt forced to other providers, abused, yelled at, and even scolded for suggesting that they would like to see Plaintiff.

38. Defendants denied Plaintiff her bonus until February of 2015, refused to reassign her to the PPFC, and refused to resolve the 401(k) problems until this suit was filed.

39. Meanwhile, the PPFC was being run by a physician's assistant named Lance Kirby.

40. Mr. Kirby's name was also on the clinic and clinic directory.

The Campaign of Harassment Escalates

41. After the filing of this case, the campaign of harassment escalated.

42. Defendants continued to direct patients away from Plaintiff, and numerous patients complained.

43. Defendants failed to properly investigate the complaints merely reciting them and claiming that they told staff to direct questions from patients to Plaintiff.

44. However, on information and belief no such instruction was given as the pattern of conduct continued, resulting in additional patient complaints.

45. Having moved Plaintiff back into the PPFC, Defendants changed the rules on her.

    a. Plaintiff was assigned a new schedule which specifically interfered with her evening education program — something which had not been the case prior to her going on military leave.

    b. Plaintiff was regularly double and/or triple booked making it impossible to provide competent care to patients and putting patients at risk.

        i. At this point, Defendants had Mr. Kirby available to assist, but instead had him doing nothing, essentially waiting in the wings until they were able to remove Plaintiff from the clinic by termination, constructive discharge, or other methods.

    ii.  When Mr. Kirby had been running the clinic he was not regularly double and/or triple booked.

    iii.  After Plaintiff was constructively discharged, Mr. Kirby again took over management of the clinic and has not regularly been double and/or triple booked.

  c.  When Plaintiff complained that she and her staff had no time to use the restroom let alone have lunch, Defendants provided relief for Plaintiffs' staff but not for Plaintiff.

  d.  Defendants then proceeded to give her inappropriate written discipline for complaining of her treatment which made it difficult for her to address the problems with them.

  e.  Plaintiff suffered physical pain and discomfort from being unable use restroom, unable to eat, drink, or sit down which was particularly problematic because of a military injury she had suffered the prior year.

  f.  Defendants also refused to give Plaintiff complete access to her clinic by not providing her keys and keeping someone else's name on the clinic, the directory, and on the brochures associated therewith.

  g.  Defendants assigned people to go through Plaintiff's desk and personal belongings before Plaintiff arrived at work.

  h.  Defendants also assigned a clerical person to "monitor" Plaintiff, a clear effort at intimidation.

46.  As a result of this harassment, plaintiff began to suffer severe emotional distress including:

  a.  Anxiety that she might provide inadequate care to patients;

  b.  Second guessing her own competence;

  c.  Fear of losing her educational opportunity;

  d.  Inability to raise issues with her supervisors;

  e.  Humiliation in the face of patients;

  f.  Feelings of being overwhelmed and losing control.

47. Plaintiff's emotional distress presented itself in numerous other ways including:

  a.  Stomach problems;

  b.  Crying;

  c.  Shaking;

  d.  Nausea and vomiting;

  e.  Chest pains;

  f.  Lack of sleep;

  g.  Heart racing; and

  h.  Feelings of panic among other things.

48. Plaintiff complained to her supervisors, Defendants Boyd, and Miller.

49. Plaintiff also complained to Defendant Burgio who was not technically her supervisor, but who claimed to be in issuing written discipline.

50. Plaintiff also complained through counsel.

51. As a result, Defendants were well aware that Plaintiff was suffering "extreme emotional distress".

52. Plaintiff's personal relationships also suffered:

  a.  Her children felt that she was snappy and irritable and that she was pushing them away.

  b.  One of her children left the home.

    c. Plaintiff's fiancé also could not handle her and left her.

53. As a result of what she was suffering, Plaintiff sought medical treatment.

54. She was placed on medication for depression and anxiety.

55. Plaintiff was eventually instructed by her psychiatrist that she could not continue to work in the environment Defendants were providing because it threatened her health.

56. On or about April 2, 2015, Plaintiff accepted that she had been constructively discharged.

57. Plaintiff was immediately admitted to intensive outpatient therapy for her psychological conditions — a program that ran from 8:30 to 3:00 five days a week.

## Count I

**Demand for Relief for Discrimination and Retaliation on the Basis of Military Status and Service and Complaints of Violations of USERRA**
**In Violation of 38 U.S.C. §§4311(a), 4313(a)(2), and 4316(c)**
**Against All Defendants**

58. Plaintiff restates and realleges paragraph 1 through paragraph 57 as paragraph 58 of this Count I.

59. By virtue of the foregoing Defendants discriminated against Plaintiff by constructively discharging her in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301, *et. seq.*, and specifically 38 U.S.C. §§4311(a), 4313(a)(2), and 4316(c)

60. As a result of these violations, Plaintiff has suffered damages of a pecuniary nature.

61. Defendants' violations were willful, warranting the imposition of liquidated damages.

WHEREFORE, Plaintiff, Christine Norris, respectfully requests that this Honorable Court enter judgment in her favor and against all Defendants, jointly and severally, for back pay, front pay, lost benefits, and liquidated damages, and for litigation expenses, attorneys' fees and costs, and for such other and further relief this Court deems just or equitable.

## Count II

### Demand for Intentional and/or Reckless Infliction of Emotional Distress
### Against All Defendants

62. Plaintiff restates and realleges paragraph 1 through paragraph 57 as paragraph 62 of this Count II.

63. By virtue of the foregoing the individual Defendants embarked upon a concerted campaign of harassment designed to cause Plaintiff severe emotional distress.

64. The campaign of harassment in parts and in sum constitutes extreme and outrageous conduct.

65. As a result of that campaign of harassment, Plaintiff suffered severe emotional distress.

66. The actions of the individual Defendants in engaging in the aforementioned campaign of harassment were taken with full knowledge that it was causing Plaintiff severe emotional distress and that she was susceptible to severe emotional distress as a result of their actions.

67. Indeed, as Defendants began to see the effects of their campaign of harassment, they intensified it.

68. The individual Defendants abused their positions of authority as part of their means of harassment.

69. The individual Defendants were acting to carry out the purpose of Defendant Franciscan in causing Plaintiff severe emotional distress in an effort to cause a constructive discharge.

70. Defendants' violations were willful, warranting the imposition of punitive damages.

WHEREFORE, Plaintiff, Christine Norris, respectfully requests that this Honorable Court enter judgment in her favor and against all Defendants, jointly and severally, for back pay, front pay, lost benefits, emotional distress and punitive damages, as well as litigation expenses, and for such other and further relief this Court deems just or equitable.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

                                      Respectfully submitted,

                                      Christine Norris

                                      By: /s/ AARON B. MADUFF

                                             One of her attorneys

Aaron B. Maduff
Atty. No. 6226932
Maduff & Maduff LLC
Michigan Plaza at Illinois Center
205 N. Michigan Avenue
Suite 2050
Chicago, IL 60601
Phone: 312/276-9000

**Certificate of Service**

The undersigned, an attorney, states that on May 11, 2015 a true and complete copy of the Plaintiff's Amended Complaint was served upon all counsel of record via the CM/ECF system.

By: /S/ AARON B. MADUFF

Aaron B. Maduff
Atty. No. 6226932
Maduff & Maduff LLC
Michigan Plaza at Illinois Center
205 N. Michigan Avenue
Suite 2050
Chicago, IL 60601
Phone: 312/276-9000